# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:12-cr-043** |
| | : | |
| | : | **SUPERSEDING** |
| **vs.** | : | **I N D I C T M E N T** |
| | : | |
| **TRACY BIAS (1)** | : | 21 U.S.C. § 841(a)(1) |
| **JOON H. CHONG** | : | 21 U.S.C. § 841(b)(1)(C) |
| **JOHN A. DALHSTEN** | : | 21 U.S.C. § 843(a)(3) |
| **MARK R. FANTAUZZI (4)** | : | 21 U.S.C. § 846 |
| **MARCELLUS JAJUAN GILREATH (5)** | : | 21 U.S.C. § 848(a) |
| **STEPHEN L. PIERCE** | : | 21 U.S.C. § 848(b)(1) |
| **JAMES E. LASSITER (7)** | : | 21 U.S.C. § 856(a)(1) |
| **STEVEN E. HILLMAN (8)** | : | 18 U.S.C. § 1956(a)(1)(A)(i) |

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment:

## INTRODUCTION

1.  Beginning in or about February 4, 2009, and continuing up to and including June 12, 2011, the defendants, **TRACY BIAS, MARK R. FANTAUZZI, MARCELLUS JAJUAN GILREATH, JAMES E. LASSITER, STEVEN E. HILLMAN,** Joon Chong, John A. Dalhsten and Stephen L. Pierce (Chong, Dalhsten, and Pierce are not charged in this Superseding Indictment) owned, operated and/or provided medical services for Southern Ohio Complete Pain Management (SOCPM), and Portsmouth Medical Solutions (PMS), and Trinity Medical Care (TRINITY), in Portsmouth, Ohio, and Columbus Ohio and Physicians Pharmacy, Piketon, Ohio in the Southern District of Ohio and elsewhere.

## BACKGROUND ON DEFENDANTS

2.      At all points relevant to this Indictment the defendant, **TRACY BIAS**, was born August 17, 1964.  **TRACY BIAS** has no known medical education.  **TRACY BIAS** was convicted of Felony Possession of Marajuana in 2006 in Pukaski County, Indiana.  **TRACY BIAS** owned, opened and operated SOCPM on or about February 4, 2009 and PMS on or about July 17, 2009 in Portsmouth, Ohio.  On or about January 26, 2010, **TRACY BIAS** became the listed owner of Trinity Medical Care LLC., located at 1687-1689 Karl Court in Columbus, Ohio.

3.      At all points relevant to the Indictment the defendant, **MARCELLUS JAJAUN GILREATH**, was born June 13, 1962.  In 1988 he received a degree in medicine from the University of Cincinnati.  On or about April 23, 1990, **MARCELLUS JAJAUN GILREATH** received his medical license from the State of Ohio.

4.      At all points relevant to the Indictment the defendant, **MARK R. FANTAUZZI**, was born November 11, 1952.  **MARK R. FANTAUZZI** received a degree in medicine from the University of Des Moines in 1987.  **MARK R. FANTAUZZI** also received a medical license from Ohio on or about June 21, 1994.

5.      At all points relevant to the Indictment the defendant, **JAMES E. LASSITER**, was born June 20, 1953.  **JAMES E. LASSITER** received a degree in medicine from the Medical University of Charleston, South Carolina in 1990.  **JAMES E. LASSITER** also received a medical license from Ohio on or about December 18, 1991.

6.      At all points relevant to the Indictment the defendant **STEVEN E. HILLMAN** received his law degree from Capital University in Columbus, Ohio. **STEVEN E. HILLMAN** was licensed to practice law in the State of Ohio on May 4, 1973.

## GENERAL ALLEGATIONS AND TERMINOLOGY

7.     The Controlled Substances Act ("CSA") governs the manufacture, distribution, and dispensation of controlled substances in the United States.  The CSA and the Code of Federal Regulations ("CFR") contain definitions relevant to this Indictment, some of which are set forth below.

8.     The term "controlled substance" means a drug or other substance, or immediate precursor, included in Schedule I, II, III, IV, and V, as designated by Title 21 of the United States Code, Section 802(c)(6), and the CFR.

9.     The term "Schedule II" means the drug or other substance has a high potential for abuse; the drug has a currently accepted medical use with severe restrictions; and abuse of the drug or other substances may lead to severe psychological or physical dependence.

10.     The term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance.

11.     The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance.

12.     The term "practitioner" means a medical doctor, physician, or other individual licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which she or he practices, to dispense a controlled substance in the course of profit.

13.     The Drug Enforcement Administration ("DEA") issues registration numbers to qualifying doctors, who become authorized to dispense Schedule II, III, IV, and V controlled substances.  To issue a prescription for a controlled substance, a doctor must have a DEA

registration number for each location in which they are dispensing medicine per state where dispensing controlled substances.

14.     A prescription for a controlled substance violates the Controlled Substances Act and CFR if it is issued beyond the bounds of medical practice or is not for a legitimate medical purpose in the usual course of a professional practice.

15.     The term "dosage" is the amount, frequency, and number of doses of medication authorized by a practitioner, who has been issued a DEA registration number.

16.     The term "titration" is to prescribe medication so that patients have optimal pain relief with minimal side effects.

17.     The purpose of a urine test is to determine if the prescribed medications and/or illicit drugs (e.g., cocaine and marijuana) are present in the urine.

18.     The purpose of a serum test is to determine the level of prescribed medications and/or illicit drugs (e.g., cocaine and marijuana) in a patient's blood.

19.     The term "serious bodily injury" means bodily injury which involves a substantial risk of death, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

20.     The term "pharmacist" means any pharmacist licensed by a State to dispense controlled substances, and shall include any person authorized by a State to dispense controlled substances under the supervision of a pharmacist licensed by such State.

21.     The term "prescription" means an order for medication which is dispensed to or for an ultimate user but does not include an order for medication which is dispensed for immediate administration to the ultimate user.

## **CHARGED CONTROLLED SUBSTANCES**

22.     OxyContin, which is also known as "Oxy," "Hillbilly Heroin," "Killer," and "Coffin," is a Schedule II controlled substance whose active ingredient is oxycodone.   Demand for OxyContin has grown to epidemic proportions in parts of Ohio, Kentucky, and other parts of the United States where drug dealers can sell an 80 mg OxyContin pill on the street for $80 to $100 or more.

23.     OxyContin, which is a brand name pill designed, manufactured, and promoted by Purdue Pharma to be a safer and less abusable drug for the treatment of chronic pain, is an analgesic-narcotic that contains oxycodone. Introduced to the market in or about 1995, OxyContin is a pill that gradually releases steady amounts of narcotics for 12 hours. OxyContin pills have contained dosages of 20 mg, 40 mg, 80 mg, and 160 mg.

24.     OxyContin and other Schedule II drugs have a high potential for abuse and can be crushed and snorted or dissolved and injected to get an immediate high.   This abuse can lead to addiction and overdose, and, sometimes death.   The injection method of abuse of OxyContin (and other drugs) oftentimes leaves highly visible scars and ulcers on a patient's arms.

25.     Vicodin is a brand name pill that contains hydrocodone a Schedule III controlled substance.

26.     Roxicodone, also known as "Roxy," is a brand name pill that contains oxycodone.

27.     Percocet, also known as "Perc," is a brand name pill that contains oxycodone.

28.     Lortab, also known as "Tab," is a brand name pill that contains hydrocodone, a Schedule III controlled substance.

29.     Valium is a brand name pill that contains diazepam, a Schedule IV controlled substance.

30.     Alprazolam is a benzodiazepine, a Schedule IV controlled substance. Xanax is the brand name for Alprazolam.

31.     Oxycodone immediate release which comes in 30 mg's and 15 mg's strengths with street terms of Oxy's, 30's or 15's, is a Schedule II controlled substances.

## COUNT 1

**THE GRAND JURY FURTHER CHARGES THAT:**

32.     Paragraphs 1 through 31 of the Indictment are re-alleged and incorporated into Count 1 of this Indictment.

33.     Beginning in or about February 5, 2009, and continuing up to and including June 6, 2011, within the Southern District of Ohio, and elsewhere, the defendants, **TRACY BIAS, MARK R. FANTAUZZI, MARCELLUS JAJUAN GILREATH, JAMES E. LASSITER, STEVEN HILLMAN,** Joon Chong, John A. Dahlsten and Stephen L. Pierce, along with others known and unknown to the grand jury, did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree together with others known and unknown to the grand jury to knowingly, intentionally, and unlawfully distribute and dispense a mixture and substance containing a detectable amount of diazepam, hydrocodone, oxycodone, and alprazalam, not for a legitimate medical purpose and outside the scope of medical practice.

**In violation of Title 21, United States Code, Section 841(a)(1).**

6

## NATURE AND PURPOSE OF CONSPIRACY

The purposes of the conspiracy included, but were not limited to, the following:

34.     To make as much money as possible by distributing and dispensing controlled substances such as diazepam, hydrocodone, oxycodone, and alprazalam, to patients, other drug users, and conspirators.

35.     To facilitate the re-distribution of controlled substances, including, but not limited to, diazepam, hydrocodone, oxycodone, and alprazalam, to drug users.

36.     To satisfy the demand for the illegal distribution, sale, and consumption of controlled substances, including, but not limited to, diazepam, hydrocodone, oxycodone, and alprazalam, in the areas of Southern Ohio, Northeastern Kentucky, and elsewhere, including, but not limited to, West Virginia, Tennessee, Ohio and Kentucky.

## WAYS, MANNERS, AND MEANS OF THE CONSPIRACY

37.     During the course and in furtherance of the conspiracy, **TRACY BIAS** co-owned and operated Southern Ohio Complete Pain Management (SOCPM) located at 1219 Findlay Street in Portsmouth, Ohio, was a co-owner in Portsmouth Medical Solutions (PMS) located at 1405 Eleventh Street in Portsmouth, Ohio and a co-owner of Trinity Medical Care (Trinity) at 1687-1689 Karls Court in Columbus, Ohio.

38.     During the course and in furtherance of the conspiracy, **TRACY BIAS** and others would secure doctors for brief periods of time ranging from one day to several years through what are known as locum tenens or temporary service contracts to prescribe pain medication for "patients"/customers at his clinics.

39.     During and in furtherance of the conspiracy, **TRACY BIAS** recruited another person known to the Grand Jury to start a pain clinic known as Trinity Medical Care (TRINITY) in Columbus, Ohio.

40.     During and in furtherance of the conspiracy, **TRACY BIAS** sold the known third party items to assist in the startup of TRINITY.

41.     During and in furtherance of the conspiracy, **TRACY BIAS** took over control of TRINITY on January 25, 2010.

42.     During and in furtherance of the conspiracy, when it was learned that Columbus based pharmacies refused to honor prescriptions from TRINITY due to the large volume of Portsmouth area customers, **TRACY BIAS** instructed customers to obtain a State of Ohio identification card with a Columbus address.

43.     During the course and in furtherance of the conspiracy, these physicians would "examine" approximately 25 or more customers a day.

44.     During the course and in furtherance of the conspiracy, these customers would travel long distances; in some cases hundreds of miles round trip or in excess of ten hours of travel time round-trip, to be treated by SOCPM, PMS, and TRINITY for severe pain.

45.     During the course and in furtherance of the conspiracy, these physicians would ignore the fact that the medical records provided indicated that a large portion of these customers had recently traveled to the State of Florida to receive treatment, that being large amounts of narcotic controlled substances.

46.     During and in furtherance of the conspiracy, SOCPM and PMS provided large amounts of prescription medications to customers that SOCPM and PMS and its' doctors knew or had a reasonable cause to believe were drug addicts.

47.     During the course and in furtherance of the conspiracy, **TRACY BIAS** and doctors Joon H.Chong, John A. Dalhsten, Stephen Pierce, **MARK R. FANTAUZZI, MARCELLUS JAJUAN GILREATH**, and **JAMES E. LASSITER**, used  persons without any real medical skills nor professional medical training and as part of their employment had them "assess", that is do the physical checkups such as blood pressure, pulse and preform the "medical examinations" such as having the customer bend to determine the extent of the injury to the customer.

48.     During the course and in furtherance of the conspiracy, **TRACY BIAS** and doctors Joon H.Chong, John A. Dalhsten, Stephen Pierce, **MARK R. FANTAUZZI, MARCELLUS JAJUAN GILREATH**, and **JAMES E. LASSITER** allowed these employees to fill in or falsify the medical assessments as to the medical information of the customer.

49.     During the course and in furtherance of the conspiracy, each of these customers would receive, at most, a cursory examination to determine the extent of the pain being suffered by the customer.

50.     During the course and in furtherance of the conspiracy, as part of the treatment, these customers would receive the same cocktail of medications.

51.     During the course and in furtherance of the conspiracy, **TRACY BIAS** would replace any doctor who did not write prescriptions for the desired types and amounts of narcotics.

52.     During the course and in furtherance of the conspiracy, **TRACY BIAS** would charge each customer cash amounts that started at approximately $200.00 per office visit.

53. During the course and in furtherance of the conspiracy, **TRACY BIAS** would not accept any customer who did not pay for the visit with cash.

54. During the course and in furtherance of the conspiracy, **TRACY BIAS** would not refund any money to a customer who did not receive service from the doctor.

55. During the course and in furtherance of the conspiracy, **TRACY BIAS** would replace physicians who left the clinic as rapidly as possible with another physician through a temporary service.

56. During the course and in furtherance of the conspiracy, **TRACY BIAS** and other persons known to the Grand Jury would "sponsor" customers, that is provide the customer with the funds necessary to pay the office visit as well as to pay for the prescription.

57. The sponsored customer would then in turn give the medication back to **TRACY BIAS** and others in return for a small amount of cash or pills.

58. During the course and in furtherance of the conspiracy, **TRACY BIAS** and others did procure the services of physicians known to the Grand Jury to prescribe medication at SOCPM, PMS, and TRINITY.

59. During the course and in furtherance of the conspiracy, **TRACY BIAS** and others would interview doctors. That interview would include a "test" to see if the doctor was willing to write prescriptions for Schedule II and III narcotic medications for persons not examined by the doctor. This "test" was a loyalty challenge to see if the physician was in concert with **TRACY BIAS'** illegal activities.

60. During the course and in furtherance, **TRACY BIAS** and doctors Joon H.Chong, John A. Dalhsten, Stephen Pierce, **MARK R. FANTAUZZI, MARCELLUS JAJUAN**

**GILREATH**, and **JAMES E. LASSITER** became aware that a vast number of SOCPM, PMS, and TRINITY customers were drug addicts.

61.     During the course and in furtherance of the conspiracy, doctors Joon H.Chong, John A. Dalhsten, Stephen Pierce, **MARK R. FANTAUZZI, MARCELLUS JAJUAN GILREATH**, and **JAMES E. LASSITER** at SOCPM, PMS, and TRINITY continued the practice of not conducting any meaningful examination of these customers to determine if there existed any legitimate medical need or purpose for the prescription of controlled substances.

62.     During the course and in furtherance of the conspiracy, doctors Joon H.Chong, John A. Dalhsten, Stephen Pierce, **MARK R. FANTAUZZI, MARCELLUS JAJUAN GILREATH**, and **JAMES E. LASSITER** at SOCPM, PMS, and TRINITY continued the practice of prescribing the same cocktail of drugs to customers.

63.     During the course and in furtherance of the conspiracy, Joon H. Chong, after learning that local pharmacies would not fill prescriptions written by him, opened a dispensary at PMS located at 1405 Eleventh Street Portsmouth, Ohio, with the purpose to provide his customers with a ready source of controlled substances at a profit for Joon Chong, **TRACY BIAS** and others known to the grand Jury.

64.     During the course and in furtherance of the conspiracy, **TRACY BIAS**, after learning that local pharmacies would not fill prescriptions written by PMS and SOCPM, opened a dispensary at SOCPM located at 1219 Findlay Street Portsmouth, Ohio, using the DEA registration number of **MARK R. FANTAUZZI** with the purpose to provide his customers with a ready source of controlled substances at a profit for **TRACY BIAS** and others known to the grand jury.

11

65.  During the course and in furtherance of the conspiracy, **TRACY BIAS** and **MARK R. FANTAUZZI** would obtain controlled substances and have them for distribution at the dispensary located at 1219 Findlay Street, Portsmouth, Ohio without a license to use these medications to fill prescriptions.

66.  During the course and in furtherance of the conspiracy, **TRACY BIAS** directed John A. Dahlsten at SOCPM to continue to write prescriptions for customers despite knowing that John A. Dahlsten, at the time, did not have a valid DEA registration and as such, could not write prescriptions for customers.

67.  During the course and in furtherance of the conspiracy, Joon H.Chong, John A. Dalhsten, Stephen Pierce, **MARK R. FANTAUZZI, MARCELLUS JAJUAN GILREATH,** and **JAMES E. LASSITER,** knowingly caused or had a reasonable expectation of addiction by these customers thereby requiring the customers to return more frequently to SOCPM , PMS, and TRINITY to obtain these controlled substances and insuring their payment of SOCPM, PMS, and TRINITY and **TRACY BIAS'** office visit fees.

68.  During and in furtherance of the conspiracy, the physicians rarely, if ever, counseled these customers regarding alternative treatments, such as physical therapy, psychological or addiction counseling, surgery, or any other treatment for patients' pain, instead of high levels of narcotics.

69.  During and in furtherance of the conspiracy, **TRACY BIAS**, Joon H.Chong, John A. Dalhsten, Stephen Pierce, **MARK R. FANTAUZZI, MARCELLUS JAJUAN GILREATH,** and **JAMES E. LASSITER,** and others known to the Grand Jury distributed and dispensed, and did aid and abet the distribution and dispensing of controlled substances, including, but not limited to, diazepam, hydrocodone, oxycodone, and alprazalam.

70.     During and in the course and in furtherance of the conspiracy, SOCPM, PMS, and TRINITY would request urine screens from customers and ignore the results of the test findings.

71.     During and in the course and in furtherance of the conspiracy, SOCPM, PMS, and TRINITY would administer urine tests for the purpose of disguising the lack of any legitimate medical purpose for the prescription, dispensing or distribution of controlled substances.

72.     During the course and in furtherance of the conspiracy, SOCPM, PMS, and TRINITY frequently issued prescriptions for narcotics including, but not limited to, diazepam, hydrocodone, oxycodone, and alprazalam, to customers despite obvious indications(red flags) that such customers were abusing, misusing, and distributing the controlled substances prescribed.

73.     During the course and in furtherance of the conspiracy, Joon H.Chong, John A. Dalhsten, Stephen Pierce, **MARK R. FANTAUZZI**, **MARCELLUS JAJUAN GILREATH**, and **JAMES E. LASSITER**, associated with SOCPM, PMS, and TRINITY prescribed excessive amounts of controlled substances, including, but not limited to, diazepam, hydrocodone, oxycodone, and alprazalam, with the knowledge and understanding or having a reasonable cause to believe that these controlled substances were being further distributed by conspirator customers due to the high cost in cash required for the office visit and obtaining of the controlled substances.

74.     During the course and in furtherance of the conspiracy, Joon H.Chong, John A. Dalhsten, Stephen Pierce, **MARK R. FANTAUZZI**, **MARCELLUS JAJUAN GILREATH**, and **JAMES E. LASSITER**, associated with SOCPM, PMS, and TRINITY prescribed excessive amounts of controlled substances, including, but not limited to, diazepam, hydrocodone, oxycodone, and alprazalam, with the knowledge and understanding or having a reasonable cause to believe that these controlled substances were actually dangerous to the customers due to other physical factors such as obesity, COPD and heart problems suffered by the customers and the

reaction of the "cocktail" would have on those customers and did so without a clear explanation of the danger of these drugs on these individuals.

75.     During the course and in furtherance of the conspiracy, Joon H.Chong, John A. Dalhsten, Stephen Pierce, **MARK R. FANTAUZZI**, **MARCELLUS JAJUAN GILREATH**, and **JAMES E. LASSITER**, continued to prescribe excessive amounts of controlled substances knowing that these distributions have resulted in numerous overdoses, and, in some cases, deaths to customers, including, but not limited to: William Adams and Keith Vaughn.

76.     During the course and in furtherance of the conspiracy, **TRACY BIAS**, Joon H.Chong, John A. Dalhsten, Stephen Pierce, **MARK R. FANTAUZZI**, **MARCELLUS JAJUAN GILREATH**, and **JAMES E. LASSITER**, and other co-conspirators known and unknown to the Grand Jury obtained substantial income and resources from their illegal distribution of controlled substances.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to effect the objects thereof, **TRACY BIAS** and others committed overt acts in the Southern District of Ohio and elsewhere including, but not limited to, the following:

77.     On or about November 4, 2009, William Adams began being seen as a patient of PMS in Portsmouth, Ohio.

78.     On or about November 4, 2009, Joon H. Chong first prescribed William Adams oxycodone, a Controlled Substance from PMS.

79.     On or about November 5, 2009, William Adams died after consuming a portion of the oxycodone prescribed by Joon H. Chong and dispensed from the East Main Street Pharmacy in Columbus, Ohio, on November 4, 2009 within the Southern District of Ohio.

80.     On or about March 24, 2010, Keith Vaughn began being seen as a patient of SOCPM in Portsmouth, Ohio.

81.     On or about March 24, 2010, **MARK R. FANTAUZZI** first prescribed Keith Vaughn oxycodone, a Controlled Substance from SOCPM.

82.     On or about March 28, 2010, Keith Vaughn died after consuming a portion of the oxycodone prescribed by **MARK R. FANTAUZZI** and dispensed from the Smartchoice Discount Pharmacy in Columbus, Ohio, on March 24, 2010, within the Southern District of Ohio.

83.     On or about January 12, 2010, Joon H. Chong opened, as the owner operator, a dispensary within the premises of PMS at 1405 Eleventh Street, Portsmouth Ohio.

84.     On or about February 8, 2010, **MARK R. FANTAUZZI** opened as the owner operator a dispensary within the premises of SOCPM at 1219 Findlay St, Portsmouth, Ohio.

85.     During the course and in furtherance of the conspiracy, **TRACY BIAS** and **STEVEN HILLMAN**, from on or about January 30, 2010, up to and including the date of the indictment, endeavored to open Physicians Pharmacy located in Piketon, Ohio to service prescriptions for controlled substances issued by the pain clinics owned and controlled by **TRACY BIAS** and others.

     **In violation of Title 21, United States Code, Section 846.**

## COUNT 2

1.      Paragraphs 1 through 85 of the Indictment are re-alleged and incorporated into Count 2 of this Indictment.

2.      Beginning in approximately, the exact date being unknown to the Grand Jury, and continuing up to and including July 7, 2010, in the Southern District of Ohio and elsewhere, Joon H. Chong, **TRACY BIAS** and others known and unknown to the Grand Jury, did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate, and agree, and have a tacit understanding with each other, to commit offenses against the United States, to wit: to knowingly, willfully, intentionally and unlawfully to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances, in violation of 21 U.S.C. § 843(a)(3).

3.      It was a part of the conspiracy that the defendant, Joon H. Chong, and others known and unknown to the Grand Jury, concocted a scheme to obtain money and controlled substances, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances from a medical doctor, licensed to prescribe said controlled substances.

4.      It was part of the conspiracy that Joon H. Chong was hired by **TRACY BIAS** and others known and unknown to be a physician at the PMS.

5.      It was further part of the conspiracy that the co-defendants along with others known and unknown to the Grand Jury, did provide Joon H. Chong with names to use in writing those prescriptions.

6.     It was further a part of the conspiracy that Joon H. Chong, would write prescriptions for OxyContin and Percocet, and other Schedule II controlled substances and hydrocodone a Schedule III controlled substance without conducting any meaningful physical examination of the customer of the pain clinic as to ascertain whether the prescription was for a legitimate medical purpose and within the scope of ordinary medical practice.

7.     It was further a part of the conspiracy that Joon H. Chong would continue to write prescriptions for the customers of the pain clinic when he learned that area pharmacies refused to fill prescriptions from the pain clinic due to concerns that the amount of medications and the "cocktail" were outside the bounds of legitimate medical purpose.

8.     It was further part of the conspiracy that Joon H. Chong, **TRACY BIAS** and the other co-conspirators would then open an un-licensed dispensary on the premises of the clinic to circumvent the need for customers to travel to another pharmacy, avoid the scrutiny of other area pharmacists and make a greater profit.

**In violation of Title 21, United States Code, Section 846**.

### COUNT 3

1.     Paragraphs 1 through 85 of the Indictment are re-alleged and incorporated into Count 3 of this Indictment.

2.     Beginning in approximately, the exact date being unknown to the Grand Jury, and continuing up to July 28, 2009, in the Southern District of Ohio and elsewhere, John A. Dahlsten, the defendant herein, **TRACY BIAS** and others known and unknown to the Grand Jury, did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate, and agree, and have a tacit understanding with each other, to commit offenses against the United States, to wit: to

17

knowingly, willfully, intentionally and unlawfully to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances, in violation of 21 U.S.C. § 843(a)(3).

3.      It was a part of the conspiracy that the defendant, John A. Dahlsten, and others known and unknown to the Grand Jury, concocted a scheme to obtain money and controlled substances, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances from a medical doctor, licensed to prescribe said controlled substances.

4.      It was part of the conspiracy that John A. Dahlsten was hired by **TRACY BIAS** and others known and unknown to be a physician at the SOCPM.

5.      It was further part of the conspiracy that the co-defendants along with others known and unknown to the Grand Jury, did provide John A. Dahlsten with names to use in writing those prescriptions.

6.      It was further a part of the conspiracy that John A. Dahlsten, would write prescriptions for OxyContin and Percocet, and other Schedule II controlled substances and hydrocodone a Schedule III controlled substance without conducting any meaningful physical examination of the customer of the pain clinic as to ascertain whether the prescription was for a legitimate medical purpose and within the scope of ordinary medical practice.

7.      It was further a part of the conspiracy that John A. Dahlsten would continue to write prescriptions for the customers of the pain clinic when he learned that area pharmacies refused to fill prescriptions from the pain clinic due to concerns that the amount of medications and the "cocktail" were outside the bounds of legitimate medical purpose.

8.      It was further part of the conspiracy that John A. Dahlsten would continue to write prescriptions for controlled narcotics despite being explicitly told that he did not have a vaild DEA registration needed to so prescribe.

**In violation of Title 21, United States Code, Section 846.**

## COUNT 4

1.      Paragraphs 1 through 85 of the Indictment are re-alleged and incorporated into Count 4 of this Indictment.

2.      Beginning in approximately, the exact date being unknown to the Grand Jury, and continuing up to and including May 17, 2011, in the Southern District of Ohio and elsewhere, **MARK R. FANTAUZZI**, the defendant herein, **TRACY BIAS** and others known and unknown to the Grand Jury, did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate, and agree, and have a tacit understanding with each other, to commit offenses against the United States, to wit: to knowingly, willfully, intentionally and unlawfully to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances, in violation of 21 U.S.C. § 843(a)(3).

3.      It was a part of the conspiracy that the defendant, **MARK R. FANTAUZZI**, and others known and unknown to the Grand Jury, concocted a scheme to obtain money and controlled substances, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances from a medical doctor, licensed to prescribe said controlled substances.

4.      It was part of the conspiracy that **MARK R. FANTAUZZI** was hired by **TRACY BIAS** and others known and unknown to be a physician at the SOCPM.

5.      It was further part of the conspiracy that the co-defendants along with others known and unknown to the Grand Jury, did provide **MARK R. FANTAUZZI** with names to use in writing those prescriptions.

6.      It was further a part of the conspiracy that **MARK R. FANTAUZZI**, would write prescriptions for OxyContin and Percocet, and other Schedule II controlled substances and hydrocodone a Schedule III controlled substance without conducting any meaningful physical examination of the customer of the pain clinic as to ascertain whether the prescription was for a legitimate medical purpose and within the scope of ordinary medical practice.

7.      It was further a part of the conspiracy that **MARK R. FANTAUZZI** would continue to write prescriptions for the customers of the pain clinic when he learned that area pharmacies refused to fill prescriptions from the pain clinic due to concerns that the amount of medications and the "cocktail" were outside the bounds of legitimate medical purpose.

8.      It was further part of the conspiracy that **MARK R. FANTAUZZI, TRACY BIAS** and the other co-conspirators would then open an un-licensed dispensary on the premises of each clinic to circumvent the need for customers to travel to another pharmacy, avoid the scrutiny of other area pharmacists and make a greater profit at the clinic.

**In violation of Title 21, United States Code, Section 846.**

## COUNT 5

1.      Paragraphs 1 through 85 of the Indictment are re-alleged and incorporated into Count 5 of this Indictment.

2.      Beginning in approximately, the exact date being unknown to the Grand Jury, and continuing up to May 2009, in the Southern District of Ohio and elsewhere, **MARCELLUS**

**JAJUAN GILREATH**, the defendant herein, **TRACY BIAS** and others known and unknown to the Grand Jury, did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate, and agree, and have a tacit understanding with each other, to commit offenses against the United States, to wit: to knowingly, willfully, intentionally and unlawfully to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances, in violation of 21 U.S.C. § 843(a)(3).

3.    It was a part of the conspiracy that the defendant, **MARCELLUS JAJUAN GILREATH**, and others known and unknown to the Grand Jury, concocted a scheme to obtain money and controlled substances, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances from a medical doctor, licensed to prescribe said controlled substances.

4.    It was part of the conspiracy that **MARCELLUS JAJUAN GILREATH** was hired by **TRACY BIAS** and others known and unknown to be a physician at SOCPM, PMS as well as many other area pain clinics.

5.    It was further part of the conspiracy that the co-defendants along with others known and unknown to the Grand Jury, did provide **MARCELLUS JAJUAN GILREATH** with names to use in writing those prescriptions.

6.    It was further a part of the conspiracy that **MARCELLUS JAJUAN GILREATH**, would write prescriptions for OxyContin and Percocet, and other Schedule II controlled substances and hydrocodone a Schedule III controlled substance without conducting any meaningful physical examination of the customer of the pain clinic as to ascertain whether the

prescription was for a legitimate medical purpose and within the scope of ordinary medical practice.

7.      It was further a part of the conspiracy that **MARCELLUS JAJUAN GILREATH** would continue to write prescriptions for the customers of the pain clinic when he learned that area pharmacies refused to fill prescriptions from the pain clinic due to concerns that the amount of medications and the "cocktail" were outside the bounds of legitimate medical purpose.

**In violation of Title 21, United States Code, Section 846.**

## COUNT 6

1.      Paragraphs 1 through 85 of the Indictment are re-alleged and incorporated into Count 6 of this Indictment.

2.      Beginning in approximately, the exact date being unknown to the Grand Jury, and continuing up to and including April 18, 2010 , in the Southern District of Ohio and elsewhere, Stephen L. Pierce, the defendant herein, **TRACY BIAS** and others known and unknown to the Grand Jury, did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate, and agree, and have a tacit understanding with each other, to commit offenses against the United States, to wit: to knowingly, willfully, intentionally and unlawfully to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances, in violation of 21 U.S.C. § 843(a)(3).

3.      It was a part of the conspiracy that the defendant, Stephen L. Pierce, and others known and unknown to the Grand Jury, concocted a scheme to obtain money and controlled

substances, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances from a medical doctor, licensed to prescribe said controlled substances.

4.     It was part of the conspiracy that Stephen L. Pierce was hired by **TRACY BIAS** and others known and unknown to be a physician at TRINITY.

5.     It was further part of the conspiracy that the co-defendants along with others known and unknown to the Grand Jury, did provide Stephen L. Pierce with names to use in writing those prescriptions.

6.     It was further a part of the conspiracy that Stephen L. Pierce, would write prescriptions for OxyContin and Percocet, and other Schedule II controlled substances and hydrocodone a Schedule III controlled substance without conducting any meaningful physical examination of the customer of the pain clinic as to ascertain whether the prescription was for a legitimate medical purpose and within the scope of ordinary medical practice.

7.     It was further a part of the conspiracy that Stephen L. Pierce would continue to write prescriptions for the customers of the pain clinic when he learned that area pharmacies refused to fill prescriptions from the pain clinic due to concerns that the amount of medications and the "cocktail" were outside the bounds of legitimate medical purpose.

**In violation of Title 21, United States Code, Section 846.**

## COUNT 7

1.     Paragraphs 1 through 85 of the Indictment are re-alleged and incorporated into Count 7 of the Indictment.

2.     Beginning in approximately December 2009, the exact date being unknown to the Grand Jury, and continuing up to February 2010, in the Southern District of Ohio and elsewhere,

**JAMES E. LASSITER**, the defendant herein, **TRACY BIAS** and others known and unknown to the Grand Jury, did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate, and agree, and have a tacit understanding with each other, to commit offenses against the United States, to wit: to knowingly, willfully, intentionally and unlawfully to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances, in violation of 21 U.S.C. § 843(a)(3).

3.      It was a part of the conspiracy that the defendant, **JAMES E. LASSITER**, and others known and unknown to the Grand Jury, concocted a scheme to obtain money and controlled substances, namely OxyContin (oxycodone) and Percocet (oxycodone), and other Schedule II controlled substances from a medical doctor, licensed to prescribe said controlled substances.

4.      It was part of the conspiracy that **JAMES E. LASSITER** was hired by **TRACY BIAS** and others known and unknown to be a physician at the SOCPM and TRINITY.

5.      It was further part of the conspiracy that the co-defendants along with others known and unknown to the Grand Jury, did provide **JAMES E. LASSITER,** with names to use in writing those prescriptions.

6.      It was further a part of the conspiracy that **JAMES E. LASSITER**, would write prescriptions for OxyContin and Percocet, and other Schedule II controlled substances and hydrocodone a Schedule III controlled substance without conducting any meaningful physical examination of the customer of the pain clinic as to ascertain whether the prescription was for a legitimate medical purpose and within the scope of ordinary medical practice.

7.      It was further a part of the conspiracy that **JAMES E. LASSITER** would continue to write prescriptions for the customers of the pain clinic when he learned that area pharmacies refused to fill prescriptions from the pain clinic due to concerns that the amount of medications and the "cocktail" were outside the bounds of legitimate medical purpose.

8.      It was further part of the conspiracy that **JAMES E. LASSITER, TRACY BIAS** and the other co-conspirators would then open a dispensary on the premises of each clinic to circumvent the need for customers to travel to another pharmacy, avoid the scrutiny of other area pharmacists and make a greater profit at the clinic.

**In violation of Title 21, United States Code, Section 846.**

## COUNT 8

1.      Paragraphs 1 through 85 of this Indictment are re-alleged and incorporated into Count 8 of the Indictment.

2.      Beginning on or about February 4, 2009, and continuing up to and including June 12, 2011, within the Southern District of Ohio, and elsewhere, the defendants, **TRACY BIAS,** John A. Dahlsten, **MARK R. FANTAUZZI, MARCELLUS JAJUAN GILREATH,** and **JAMES E. LASSITER,** with others known to the grand jury, did knowingly, willfully and unlawfully open, lease, rent, use or maintain any place; to wit: SOUTHERN OHIO COMPLETE MEDICAL SOLUTIONS located at 1219 Findlay Street  Portsmouth, Ohio, whether permanently or temporarily for the purpose of distributing any controlled substance.

**In violation of Title 21, United States Code, Section 856(a)(1) and
Title 18, United States Code, Section 2.**

## COUNT 9

1.      Paragraphs 1 through 85 of this Indictment are re-alleged and incorporated into Count 9 of the Indictment.

2.      Beginning on or about July 2009 and continuing up to July 2011, within the Southern District of Ohio, and elsewhere, the defendant, **TRACY BIAS,** Joon H. Chong**,** and **MARCELLUS JAJUAN GILREATH** with others known to the grand jury, did knowingly, willfully and unlawfully open, lease, rent, use or maintain any place; to wit: PORTSMOUTH MEDICAL SOLUTIONS located at 1405 Eleventh Street Portsmouth, Ohio, whether permanently or temporarily for the purpose of distributing any controlled substance.

> **In violation of Title 21, United States Code, Section 856(a)(1) and**
> **Title 18, United States Code, Section 2.**

## COUNT 10

1.      Paragraphs 1 through 85 of this Indictment are re-alleged and incorporated into Count 10 of the Indictment.

2.      Beginning on or about January 25, 2010 and continuing up to and including, the exact date being unknown to the Grand Jury, within the Southern District of Ohio, and elsewhere, the defendant, **TRACY BIAS,** Stephen L. Pierce, and **JAMES E. LASSITER** with others known to the grand jury, did knowingly, willfully and unlawfully open, lease, rent, use or maintain any place; to wit: TRINITY MEDICAL CARE located at 1687-1689 Karl Court, Columbus, Ohio, whether permanently or temporarily for the purpose of distributing any controlled substance.

> **In violation of Title 21, United States Code, Section 856(a)(1) and**
> **Title 18, United States Code, Section 2.**

## COUNT 11

1.    Paragraphs 1 through 85 of this Indictment are re-alleged and incorporated into Count 11 of the Indictment.

2.    Beginning in or about February 2, 2009, the exact date being unknown, and continuing thereafter up to and including the date of this indictment, in the Southern District of Ohio and elsewhere, defendant **TRACY BIAS**, did unlawfully, knowingly, and intentionally engage in a continuing criminal enterprise in that he unlawfully, knowingly, and intentionally violated Title 21 United States Code, Sections 841(a)(1), 843 (a)(3), 846 and 856, which violations include, but are not limited to, the substantive violations alleged in Count 1; the substantive violations alleged in the Overt Acts alleged in Count 1, which Overt Acts are re-alleged and incorporated herein by reference as though fully set forth in this Count, which violations were part of a continuing series of violations of the Controlled Substances Act, Title 21 United States Code, Section 801, et seq., undertaken by defendant **TRACY BIAS**, in concert with at least five other persons with respect to whom defendant, **TRACY BIAS**, occupied the position of principal organizer, supervisor, and a position of management from which such continuing series of violations the defendant, **TRACY BIAS** obtained substantial income and resources. Furthermore, defendant, **TRACY BIAS** was the principal administrator, organizer, supervisor and leader of the criminal enterprise, which involved conspiring to possess with the intent to distribute and to distribute quantities of oxycodone, a Schedule II controlled substance, as set forth in Count 1, hydrocodone, a Schedule III controlled substance and other Schedule IV controlled substances.

**In violation of Title 21, United States Code, Sections 848(a) and (b)(1)
and Title 18, United States Code, Section 2.**

## COUNT 12

1.      Paragraphs 1 through 85 of this Indictment are re-alleged and incorporated into Count 12 of the Indictment.

2.      On or about July 14, 2010, in the Southern District of Ohio and elsewhere, Defendants **TRACY BIAS** and **STEVEN HILLMAN** , and others known and unknown to the grand did knowingly conduct or attempted to conduct a financial transaction or transactions affecting interstate commerce, to wit: a deposit of $132,920.00 dollars in United States currency into the Chase bank which involved the proceeds of a specified unlawful activity, that is Conspiracy to Distribute and Dispense Controlled Substances in violation of Title 21 U.S.C.§ 841(a)(1) and 846 and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity the knowing that the property involved were represented to be and in fact were proceeds of specified unlawful activity.

**All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) , (h) and Title 18, United States Code, Section 2.**

## FORFEITURE ALLEGATIONS

**THE GRAND JURY FURTHER CHARGES THAT:**

### Forfeiture Allegation I

The defendant, **TRACY BIAS**, if convicted of Counts 1 through 12 of this Indictment, shall forfeit to the United States any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of such violation; and any of the defendant's

property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation, including, but not limited to, the following:

**BANK ACCOUNT**

b.      Contents of Woodforest National Bank Account No. XXX0017 in the name of Southern Ohio Complete Pain Management c/o Tracy Bias at Woodforest National Bank.   The value is Forty-Three Thousand and Nine Hundred Ninety-Seven Dollars and Ninety-Seven Cents ($43,997.97);

**VEHICLES**

c.      A 2007 Chevrolet TrailBlazer, VIN 1GNDS13S772275112, with all attachments thereon;

d.      A 2005 Toyota Camry, VIN 4T1BF30K85U109439, with all attachments thereon;

e.      A 2005 Ford F150 Pickup VIN 1FTRF04W95KC01217, with all attachments thereon;

**U.S. CURRENCY**

f.      Two Thousand Three Hundred Fifty-Eight Dollars and Forty Cents ($2,358.40) in United States Currency; and

g.      Three Thousand Two Hundred and One Dollars and Eighty Cents ($3,201.80) in United States Currency.

## Forfeiture Allegation II

Upon conviction of the offenses set forth in Counts1 through 12 of this Indictment, the defendants, **TRACY BIAS, MARK R. FANTAUZZI, MARCELLUS JAJUAN GILREATH, JAMES E. LASSITER, and STEVEN HILLMAN**, shall forfeit to the United States pursuant

to 21 U.S.C. § 853(a), (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said violations; and (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations, including but not limited to a money judgment of at least $6,750,000.00 in U.S. currency, which represents the proceeds the defendants obtained, directly or indirectly, as a result of the offense for which they are charged and the following specific property:

a.     Medical license issued to **MARCELLUS JAJUAN GILREATH** in Ohio;

b.     Medical license issued to **MARK R. FANTAUZZI** in Ohio; and

c.     Medical license issued to **JAMES LASSITER** in Ohio.

### Forfeiture Allegation III

Upon conviction of the offenses set forth in Count 12 of this Indictment, the defendants, **TRACY BIAS and STEVEN HILLMAN**, shall forfeit to the United State, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property including but not limited to a money judgment of at least $212,900.00 in U.S. currency, which represents the proceeds the defendants obtained, directly or indirectly, as a result of the conspiracy for which they are charged.

### Substitute Assets

If any of the property described above in Forfeiture Allegations I, II, and III, as a result of any act or omission of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

30

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided

without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. §  853(p), to seek forfeiture of any

other property of said defendants up to the value of the above forfeitable property.


**A TRUE BILL.**

**GRAND JURY FOREPERSON**


**CARTER STEWART**
**UNITED STATES ATTORNEY**


**ROBERT C. BRICHLER**
**CHIEF, ORGANIZED CRIME DRUG ENFORCEMENT TASK FORCE**