```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION

                              - - -

 UNITED STATES OF AMERICA,    .  Case No. 1:12-cr-043
                              .
           Plaintiff,         .  Excerpt from Proceedings
                              .  Change of Plea
        - v -                 .
                              .  Friday, June 7, 2013
 TRACY BIAS, et al.,          .  Cincinnati, Ohio
                              .
           Defendants.        .  11:40 a.m.
 . . . . . . . . . . . . . . .


                     TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE MICHAEL R. BARRETT



 For the Plaintiff:      TIMOTHY D. OAKLEY, ESQ. (AUSA)
                         EMILY N. GLATFELTER, ESQ. (AUSA)
                         United States Attorney's Office
                         221 East Fourth Street, Suite 400
                         Cincinnati, Ohio  45202


 For the Defendant:      JOHN T. KELLER, ESQ.
                         2345 Kemper Lane
                         P.O. Box 6129
                         Cincinnati, Ohio  45206



 Also Present:           Special Agent Brian Carroll, FBI
                         Agent Christopher Kresnak, DEA


 Courtroom Deputy:       Barbara A. Crum

 Court Reporter:         Maryann T. Maffia, RDR
                         239 Potter Stewart U.S. Courthouse
                         100 E. Fifth Street
                         Cincinnati, Ohio 45202
```

```
 1                P R O C E E D I N G S
 2                       * * *
 3         THE COURT:  Agent, if you would just state your full
 4  name and spell your last time for the record, give us your
 5  duty assignment and then the facts, I'd appreciate it.  You
 6  can work from the table if you wish.
 7         AGENT CARROLL:  Thank you, Your Honor.
 8      Brian Carrolll, C-A-R-R-O-L-L, Special Agent with the
 9  F.B.I. assigned to the Portsmouth, Ohio, resident agency.
10      Beginning in on or about February 5, 2009, and continuing
11  up to and including June 6, 2012, within the Southern District
12  of Ohio and elsewhere, the defendant, Tracy Bias, along with
13  others known and unknown to the grand jury, did knowingly,
14  intentionally and unlawfully combine, conspire, confederate,
15  and agree, together with others known and unknown to the grand
16  jury, to knowingly, intentionally and unlawfully distribute
17  and dispense a mixture and substance containing a detectable
18  amount of diazepam, hydrocodone, oxycodone, and alprazolam not
19  for a legitimate medical purpose and outside the scope of
20  medical practice, in violation of Title 21 United States Code
21  Section 841(a)(1) and 846.
22      Tracy Bias agrees that during the course and in
23  furtherance of the conspiracy he co-owned and operated
24  Southern Ohio Complete Pain Management, SOCPM, located at 1219
25  Findlay Street in Portsmouth, Ohio, and was co-owner in
```

1  Portsmouth Medical Solutions, PMS, located at 1405 Eleventh
2  Street in Portsmouth, Ohio.
3      During the course and in furtherance of the conspiracy,
4  Tracy Bias and others would secure doctors for brief periods
5  of time, ranging from one day to several years, through what
6  are known as *locum tenens* or temporary service contracts to
7  prescribe pain medication for patients at SOCPM and PMS.
8      During the course and in furtherance of the conspiracy,
9  these physicians would examine approximately 30 or more
10 patients a day.  As part of the conspiracy and as a means to
11 avoid scrutiny by police, when the number of patients at one
12 of the clinics exceeded 30 patients, Bias and other owners
13 would open another clinic.
14     Tracy Bias would charge each patient cash amounts that
15 started at approximately $200 per office visit.  Bias and the
16 other owners would not accept any patient would did not pay
17 for the visit with cash.  Neither Bias nor the other owners
18 would refund any money to a patient who did not receive
19 service from the doctor.
20     During the course and in furtherance of the conspiracy,
21 Tracy Bias would replace physicians who left the clinic as
22 rapidly as possible with another physician through a temporary
23 service.
24     During and in the course of the conspiracy, Steve Hillman
25 would direct Tracy Bias to continue to use a physician to

write prescriptions for controlled substances despite having actual knowledge that the physician in question did not have a valid DEA registration number and, therefore, was prohibited by law to write those prescriptions, the purpose of this being to generate cash into the clinic from the customers.

During the course and in furtherance, Bias and others became aware that a vast number of SOCPM and PMS patients were drug addicts. The physicians and untrained medical staff at SOCPM and PMS continued the practice of not conducting any meaningful examination of these patients to determine if there existed any legitimate medical need or purpose for the prescription of controlled substances.

The physicians at SOCPM and PMS continued the practice of prescribing the same cocktail of drugs to each patient forgoing the standard of individualized treatment. The physicians rarely, if ever, counseled these patients regarding alternative treatments such as physical therapy, psychological or addiction counseling, surgery or any other treatment for patients' pain instead of high levels of narcotics.

Moreover, during the course and in furtherance of the conspiracy, the physicians knowingly caused or had a reasonable expectation of addiction by these patients thereby requiring the patients to return regularly to SOCP and PMS to obtain these controlled substances and ensuring their payment of SOCPM and PMS's office visit fees.

In addition, SOCPM and PMS would request urine screens from patients and ignore the results of test findings. SOCPM and PMS would administer these urine tests for the purpose of disguising the lack of any legitimate medical purpose for the prescription, dispensing, or distribution of controlled substances.

During the course and in furtherance of the conspiracy, SOCPM and PMS frequently issued prescriptions for narcotics, including but not limited to diazepam, hydrocodone, oxycodone and alprazolam to patients despite obvious indications, red flags, that such patients were abusing, misusing and distributing the controlled substances prescribed.

The doctors at SOCPM and PMS prescribed excessive amounts of controlled substances including but not limited to hydrocodone, oxycodone and alprazolam with the knowledge and understanding or having a reasonable cause to believe that these controlled substances were being further distributed by the conspirator customers due to the high cost in cash required for the office visit and obtaining of the controlled substances.

Tracy Bias and others known to the grand jury distributed and dispensed and, as an owner of the clinic, did aid and abet the distribution and dispensing of controlled substances including but not limited to diazepam, hydrocodone, oxycodone and alprazolam and, as a result of those pill clinic

1  operations, Tracy Bias and other co-conspirators obtained
2  substantial income and resources from their illegal
3  distribution of controlled substances, all in the Southern
4  District of Ohio.
5      Further, Tracy Bias provided equipment and received
6  regular payment from Trinity from the proceeds from the
7  operation.
8      It was further part of the conspiracy that Bias, due to
9  the fact that local pharmacies refused to honor prescriptions
10 written by doctors of SOCPM and PMS, understood that the
11 doctors at SOCPM and PMS opened a dispensary in each of these
12 clinics to distribute pain medications and other controlled
13 substances to customers, funded at least one of these doctors
14 to purchase medication to open those dispensaries.
15      It was further part of the conspiracy that the doctors
16 then applied for a license from the State of Ohio to operate
17 the dispensaries.  Bias, Journey and Hillman were aware that
18 the license application was denied by the State of Ohio.  It
19 was further part of the conspiracy that these dispensaries
20 would operate and provide controlled substances to customers
21 despite being without a license from the State of Ohio to do
22 so.
23      It was further part of the conspiracy that when local
24 pharmacies would not honor prescriptions written by the Bias
25 clinics in Portsmouth, Tracy Bias, Steven Hillman and others

entered into an agreement to open their own pharmacy, Physicians Pharmacy, in Piketon, Ohio. The purpose of the pharmacy was to only fill prescriptions written by Bias clinics, including SOCPM and PMS, as well as other pain clinics throughout the country, thus allowing Bias and Hillman to continue to make hundreds of thousands of dollars from this operation.

It was further part of the conspiracy that Tracy Bias did provide approximately $212,000 in cash derived from the operation of the pain clinics to Hillman with the purpose to provide operating capital for Physicians Pharmacy. Hillman was aware of the source of the cash. Hillman and others were listed as the owners of the pharmacy. Bias was not named as an owner due to his criminal background.

It was further part of the conspiracy that Hillman and others would find the building they wanted to use in Piketon, Ohio. As part of the conspiracy, Tracy Bias went to the building with Steve Hillman and inspected the property that he was funding.

It was further part of the conspiracy that the purpose of Physicians Pharmacy was to operate as a distribution point for pain medication and other controlled substances from clinics with Tracy Bias as the listed owner, and others, thus making Bias and Hillman millions of dollars in income from the distribution of pills.

```
 1      I have read the above Statement of Facts with my attorney.
 2  I agree to the accuracy of the Statement of Facts and
 3  acknowledge the truth of the Statement of Facts as detailed
 4  above.
 5      It's signed by Tracy Bias, the defendant.
 6          THE COURT:  Tracy, is that your signature there above
 7  your line?
 8          THE DEFENDANT:  Yes, sir, it is.
 9          THE COURT:  And did you sign that because what was
10  just read in open court was true?
11          THE DEFENDANT:  Yes, sir.
12          THE COURT:  Is it wrong or incorrect in way?
13          THE DEFENDANT:  Well, they's a couple of things on
14  there Peter Link, the attorney, told me that I would have a
15  chance to explain.
16      Well, I can't find it right off the top, but it was about
17  the part that where Steve Hillman directed me to use doctors
18  knowing that their DEA license was expired.
19          THE COURT:  Hang on a second.  I don't remember it
20  being quite said like that.
21          MR. KELLER:  I may be able to find it.  Just a
22  minute.
23          THE COURT:  It says that you, Journey and Hillman
24  were aware of the application was denied and that the
25  dispensaries would operate and provide controlled substances
```

```
 1   without a license from the State of Ohio.
 2        Is that the part you're talking about?
 3             THE DEFENDANT:  No, sir.
 4             MR. OAKLEY:  It's page 9, Your Honor, and page 2 of
 5   the Statement of Facts.
 6             MR. KELLER:  Page what?
 7             MR. OAKLEY:  Page 9.
 8             COURTROOM DEPUTY:  It's the fourth paragraph down.
 9             THE COURT:  Which one?
10             COURTROOM DEPUTY:  The fourth paragraph, page 9 of
11   the Statement of Facts, fourth paragraph.
12             THE COURT:  So it says you and Hillman would use
13   physicians despite having actual knowledge that they did not
14   have DEA registration numbers.  That's the one?
15             THE DEFENDANT:  Yes, sir.
16             THE COURT:  Okay.  What about that?
17             THE DEFENDANT:  Okay.  We did not know that the
18   doctor's DEA registration was expired.
19             THE COURT:  Okay.
20             THE DEFENDANT:  But other than that, everything else
21   is pretty well true.  We became aware.  That is the last day
22   that that doctor worked.
23             MR. OAKLEY:  This results from a phone call from the
24   DEA to the clinic about that doctor where it was discussed
25   that his registration had expired, led to several phone calls,
```

1  but Mr. Bias was notified, along with Mr. Hillman, that that
2  doctor during the day had an expired registration, and they
3  continued to be open that day.
4          THE COURT: Well, irrespective of that fact, let's
5  just suppose that paragraph was stricken, there are still
6  sufficient facts in here for a conviction of Count One of the
7  conspiracy; correct?
8          MR. OAKLEY: Yes.
9          THE COURT: Do you agree with that?
10         THE DEFENDANT: Yes, sir.
11         THE COURT: Okay. So you are offering to plead
12 guilty to Count One of the Superseding Indictment because you
13 did commit the case as set forth in the Plea Agreement and the
14 findings of facts other than that one reservation?
15         THE DEFENDANT: Yes, sir.
16         THE COURT: Okay.
17    In light of all the discussions we've had about the Plea
18 Agreement, the possible outcomes of the case and your
19 constitutional rights, I'll ask you for last time, Tracy: How
20 do you wish to plead to the charge in Count One of the
21 Superseding Indictment, guilty or not guilty?
22         THE DEFENDANT: Guilty, Your Honor.
23                        * * *

# C E R T I F I C A T E

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

S/MARYANN T. MAFFIA, RDR

Official Court Reporter